# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD R.L. COOK & TOMMY SHAW FOUNDATION FOR BLACK EMPLOYEES OF THE LIBRARY OF CONGRESS, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES H. BILLINGTON, <br><br> Defendant. | Civil Action 10-01315 (HHK) |

## MEMORANDUM OPINION

Plaintiffs, four Black employees of the Library of Congress and the Howard R.L. Cook & Tommy Shaw Foundation ("the Foundation"), which represents current and former Library employees, bring this action against Librarian of Congress James H. Billington, in his official capacity. Plaintiffs allege that the Library violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by refusing to recognize the Foundation as an employee organization and failing to publish annual equal employment opportunity plans. Before the Court is the Librarian's motion to dismiss [#11], which argues that plaintiffs lack standing to bring their claims and fail to state a plausible claim for relief. Upon consideration of the motion, the opposition thereto, the record of this case, and oral argument of counsel, the Court concludes that the motion must be granted.

# I.  BACKGROUND

The Foundation is a nonprofit organization composed of current and former Library employees.  Compl. ¶¶ 3–5.  The Foundation's activities include assisting Library employees with pursuing claims of discrimination against the Library.  Compl. ¶ 22.  The Foundation has repeatedly sought formal recognition by the Library, which would allow it to (among other things) hold meetings in Library facilities and distribute materials to other Library employees, including new hires.  Compl. ¶¶ 12–14.  The Foundation made one such request for recognition in June 2008.  Compl. ¶ 15.  The Library denied the request, informing the Foundation that "it would not be appropriate for the Library to . . . officially recognize an organization that has as its main goals assisting individuals in filing and maintaining claims . . . against the Library."  Compl. ¶ 16 (quoting letter from Dennis Hanratty, Director of Human Resources Services (July 10, 2008)) (internal quotation marks omitted); *see also* Compl. ¶ 17 (Library Chief Operating Officer's agreement that recognition of the Foundation would not be appropriate).  After exhausting their administrative remedies regarding the Library's denial of recognition, *see* Compl. ¶¶ 18–19, plaintiffs filed this suit, alleging that the denial constituted unlawful retaliation in violation of Title VII.  Compl. ¶¶ 21–22.  Plaintiffs further allege that the Library has also violated Title VII by failing to publish annual EEO reports as required by 42 U.S.C. § 2000e-16(b).  *See* Compl. ¶¶ 25–31.  Plaintiffs allege that the Library has not complied with its obligations under § 2000e-16(b) since 2004.  Compl. ¶¶ 27–28.

## II. LEGAL STANDARDS

### A. Lack of Subject-Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or a claim therein, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . ."). In response to such a motion, the plaintiff must show that her claims lie within "the judicial Power of the United States," U.S. CONST. art. III, § 1, and that a federal statute grants the Court jurisdiction to hear those claims. *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) (citing *Mayor v. Cooper*, 73 U.S. 247, 252 (1868)); *see also Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff cannot establish both elements, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 U.S. 506, 514 (1868)).

### B. Failure to State a Claim

On a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), the Court will dismiss a complaint or claim that fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* FED. R. CIV. P. 12(b)(6). Thus, although a complaint need not contain detailed factual allegations, it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949 (2009) (quoting

*Twombly*, 550 U.S. at 555). A plausible claim for relief is one that allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

**A.     Plaintiffs' Retaliation Claim**

"Title VII prohibits federal agencies from . . . retaliating against employees for the assertion of their rights under Title VII." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001); *Ethnic Emps. of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1415 & n.13 (D.C. Cir. 1985)). Here, plaintiffs' first claim alleges that the Library ran afoul of this prohibition when it refused to recognize the Foundation as an official employee organization. Plaintiffs allege that the Library's denial of recognition was a direct response to the Foundation's opposition to employment discrimination at the Library. *See* Compl. ¶ 21. The Librarian seeks the dismissal of this claim on two grounds: first, that plaintiffs have no standing to raise this claim, and second, that plaintiffs have failed to state a plausible claim of retaliation under Title VII. Because the Librarian's standing argument goes to the Court's jurisdiction, the Court must address it first. *AT&T Corp. v. FCC*, 317 F.3d 227, 237 (D.C. Cir. 2003).

**1.     Plaintiffs Have Standing to Bring this Claim**

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court explained that "the irreducible constitutional minimum of standing" contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability. *Id.* at 560–61. To invoke federal jurisdiction, a plaintiff must show all three. *Id.* at 561. At the motion-to-dismiss stage, independent proof of these

4

elements is not needed; standing can be established by "general factual allegations." *Id*. Here, the Librarian challenges the standing of both the individual plaintiffs and the Foundation, arguing that all plaintiffs fail to allege a concrete injury-in-fact.

Plaintiffs counter that they have all alleged injuries sufficient to confer standing. They also argue, however, that the Court has already resolved the standing issue in their favor. In a prior suit by the Foundation and four individual plaintiffs (three of whom are plaintiffs here) against the Library, this Court held that the Foundation and those plaintiffs had standing to challenge the Library's denial of recognition to the Foundation. *See Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of the Library of Cong., Inc., v. Billington* (*Cook & Shaw Found. I*), 541 F. Supp. 2d 358, 362–63 (D.D.C. 2008). The Court explained that the Library's refusal to recognize the Foundation caused an injury-in-fact to the individual plaintiffs because it burdened their ability to participate in the Foundation's activities by imposing inconvenience and expense. *Id*. at 362. That fact also granted the Foundation standing to sue on behalf of its members, *id*. at 362–63; however, the Foundation lacked standing to sue on its own behalf because it lacked rights under Title VII. *Id.* at 363.[1]

Plaintiffs argue that the doctrine of issue preclusion prevents the Librarian from relitigating the questions of standing that were decided in *Cook & Shaw Foundation I*. "Issue preclusion applies '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 334 (D.C. Cir. 2011) (alteration in original) (quoting

---

[1] After finding that the *Cook & Shaw Foundation I* plaintiffs had standing, the Court dismissed their claim that the Library's refusal to recognize the Foundation was unlawful because they had failed to exhaust their administrative remedies. 541 F. Supp. 2d at 364.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)). Plaintiffs contend that *Cook & Shaw Foundation I* was a valid and final judgment and that the same question of standing, based on the same injury-in-fact, was actually and necessarily decided there.

The Librarian makes two responses, neither of which are persuasive. First, the Librarian asserts that "standing must be determined for each suit individually." Def.'s Reply at 2. To the extent that this statement reflects an assumption that standing determinations are exempt from issue preclusion, it is simply incorrect. *See Cutler v. Hayes*, 818 F.2d 879, 889 (D.C. Cir. 1987) ("Principles of collateral estoppel clearly apply to standing determinations."); *Newdow v. Bush*, 391 F. Supp. 2d 95, 99–101 (D.D.C. 2005) (giving preclusive effect to a dismissal based on lack of standing). Second, at oral argument, the Librarian asserted that issue preclusion should not apply here because *Cook & Shaw Foundation I* challenged the Library's 2004 denial of recognition, as opposed to the 2008 denial at issue here; thus, the two cases involve different injuries. But the Librarian identifies no material difference between the legal *issue* decided there and the one presented here; in both cases, plaintiffs' standing turns on whether the Library's refusal to recognize the Foundation caused plaintiffs sufficient harm to create a cognizable injury-in-fact under Article III of the Constitution. And the Court answered that precise question in *Cook & Shaw Foundation I*. *See* 541 F. Supp. 2d at 362–63. Accordingly, the Court concludes that its prior judgment in *Cook & Shaw Foundation I* has binding, preclusive effect here and establishes plaintiffs' standing to bring this claim.[2]

### 2. Plaintiffs Have Failed to State a Claim of Retaliation

---

[2] Further, the Librarian offers no reason why the Court's analysis in *Cook & Shaw Foundation I* — even if not binding — is inapplicable or incorrect. Thus, even if not bound to do so, the Court would reach the same result for the same reasons.

Next, the Librarian argues that plaintiffs' retaliation claim must be dismissed because it fails to state a claim on which relief may be granted. To state a claim of retaliation, a plaintiff must allege materially adverse action in response to activity protected by Title VII. *See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1213 (D.C. Cir. 2006)) (internal quotation marks omitted).

Here, plaintiffs contend that the Library's refusal to recognize the Foundation "may well 'dissuade' a Library employee working with the Foundation from 'supporting a charge of discrimination' if that employee knows such support will affect the Foundation's ability to access the same facilities as other Library-approved organizations." Pls.' Opp'n at 5. The Librarian responds that the denial of recognition was not materially adverse because "the Foundation is free to continue its operations and the individual plaintiffs are free to associate through the Foundation." Def.'s Mem. at 7.

Both parties' arguments are flawed. The Librarian, for his part, simply fails to apply the material-adversity standard articulated by the Supreme Court in *Burlington Northern*. In arguing that the denial of recognition was not materially adverse because the Foundation and its members remain free to operate and associate, the Librarian fails to recognize that the question under *Burlington Northern* is not whether the Library has *barred* its employees from engaging in protected activity, but rather whether its actions would *deter* a reasonable employee from doing so. *See Burlington N.*, 548 U.S. at 68. And plaintiffs, while adverting to the proper standard, misapply it. Plaintiffs contend that the "key question under *Burlington Northern* is whether

7

Defendant's alleged retaliation would dissuade the *Foundation and its employees* from engaging in protected activity, *not third parties*." Pls.' Opp'n at 5 (second emphasis added). Insofar as plaintiffs argue for a subjective material-adversity standard, their position is contrary to law. The *Burlington Northern* standard requires the Court to ask "whether the objective 'reasonable worker' would have been dissuaded from making [or supporting] a discrimination complaint," *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 n.5 (D.C. Cir. 2008) (quoting *Burlington N.*, 548 U.S. at 68), not whether the plaintiffs themselves would have been deterred. *See id.*; *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008).[3]

These issues aside, the question remains whether the Library's refusal to recognize the Foundation would dissuade a reasonable employee from making or supporting a charge of discrimination. In turn, the answer to that question depends on the deterrent effect of non-recognition. *See Rattigan v. Holder*, 604 F. Supp. 2d 33, 52 (D.D.C. 2009) ("Under *Burlington*, the touchstone for 'material adversity' is deterrence." (quoting *Burlington N.*, 548 U.S. at 68)). In other words, the Court must ask whether the prospect of non-recognition would likely prevent that employee from pursuing a charge of discrimination. *See id.* at 52–53.

The Court must answer that question in the negative. Although the benefits of Library recognition are substantial enough that the denial thereof can confer standing on plaintiffs, *see Cook & Shaw Found. I*, 541 F. Supp. 2d at 362–63, they are not so significant that a reasonable

---

[3] Indeed, the fact that the Court's inquiry is objective is a boon to plaintiffs; if it were subjective, the fact that plaintiffs filed this lawsuit, or engaged in other protected activity after the alleged retaliation, could weigh against a finding of material adversity. *See Baloch*, 550 F.3d at 1199 n.5 (rejecting the district court's conclusion that "[t]he filing of a complaint after an alleged instance of retaliation militates against a conclusion that retaliation occurred, as it demonstrates that the filer was not in fact dissuaded from protecting his rights." (quoting *Baloch v. Norton*, 517 F. Supp. 2d 345, 361 (D.D.C. 2007)) (internal quotation marks omitted)).

employee would refrain from complaining of discrimination for fear of jeopardizing them. In essence, recognition enables organizations to conduct certain clearly defined activities on Library premises, most of which remain subject to Library approval.[4] For example, organizations may hold an annual one-hour membership meeting — if attendees have permission from their supervisors to leave work. Likewise, organizations can distribute certain informational materials to other employees, with Library approval. The prospect of being denied these benefits is simply not "likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and [the Library]." *Burlington N.*, 548 U.S. at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). Having to, for example, have a meeting off premises or after hours is the sort of "slight[]" or "annoyance[]" that does not rise to the level of materially adverse action. *See id.*

Nor is the Court persuaded by the alternate theory of material adversity that plaintiffs set forth at oral argument. There, plaintiffs argued that non-recognition sends a signal to Library employees that the Foundation is somehow illegitimate; that is, non-recognition stigmatizes the Foundation and thereby deters Library employees who are considering pursuing claims of discrimination from consulting with the Foundation before doing so. But there is no suggestion in the complaint that non-recognition has such an effect; on the contrary, the complaint alleges

---

[4] The full benefits of Library recognition are these: (1) annual membership meetings on Library property during "official time," not to exceed one hour, provided that members are cleared by their supervisors to attend; (2) "[o]ther meetings and activities" on Library premises during "non-duty time," if approved by the Library; (3) posting organizational material on Library bulletin boards; (4) distribution of certain material to Library staff, with approval; and (5) distribution of material "descriptive of [organizational] activities" by the Library during new employee orientation. Def.'s Mem. Ex. 4 (LCR 2022-2) at 3. The Court may consider these Library regulations when deciding the Librarian's Rule 12(b)(6) motion because they are "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see* Compl. ¶ 13.

only that non-recognition deprives the Foundation of the minimal practical benefits discussed above. There is no indication that Library employees avoid the Foundation as a result of non-recognition. Moreover, this argument simply does not suggest that non-recognition presents the "deterrent prospect of harm" that is at the heart of the material-adversity inquiry. *See Rattigan*, 604 F. Supp. 2d at 52 (emphasis omitted). On the facts alleged in the complaint, non-recognition appears to present no more than an inconvenience for Foundation members and non-members alike.

In reaching this conclusion, the Court is mindful that, under *Burlington Northern*, "[c]ontext matters." 548 U.S. at 69. But having carefully reviewed the allegations in the complaint, the Court cannot conclude that the difference between recognition and non-recognition is significant enough that a reasonable Foundation member would refrain from pursuing a charge of discrimination in order to increase her organization's chance of recognition, or that a non-member would be deterred from pursuing a complaint by the Foundation's non-recognized status. Nothing in the complaint suggests that the "surrounding circumstances, expectations, and relationships" within the Library would establish otherwise. *See id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)) (internal quotation marks omitted). Accordingly, the Court must hold that plaintiffs have failed to allege a materially adverse action that can give rise to a Title VII retaliation claim.

There is also a further problem, unaddressed by either party, with plaintiffs' retaliation claim. As noted above, Title VII prohibits retaliation in response to statutorily protected activity. *Stewart*, 275 F.3d at 1134. Two types of activity qualify: opposition activity (opposing "any practice made an unlawful employment practice by" Title VII) and participation activity (making

a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII). 42 U.S.C. § 2000e-3(a); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, —U.S.—, 129 S. Ct. 846, 850 (2009). Here, plaintiffs aver that the Library refused to recognize the Foundation "because th[e] Foundation has assisted employees in filing charges against it and in helping prosecute suits filed against the Library." Compl. ¶ 21. But activity of either type is protected only if engaged in by "employees or applicants for employment," 42 U.S.C. § 2000e-3(a), and the Foundation is neither. At one point, the complaint appears to refer vaguely to protected activity on the part of the Foundation's "current and former members," Compl. ¶ 22, but nowhere does it describe specific instances of protected activity on the part of individual Library employees (or plaintiffs themselves). It is thus unclear that, even if plaintiffs had alleged a materially adverse action, they would have adequately tied that action to activity protected by Title VII.

**B.    Plaintiffs' EEO-Report Claim Is Dismissed Without Prejudice**

Plaintiffs' second claim alleges that the Library has violated Title VII by failing to publish annual EEO reports as required by 42 U.S.C. § 2000e-16(b). In response to the Librarian's motion to dismiss, however, plaintiffs concede that this claim was not administratively exhausted as required by Title VII when the complaint in this action was filed. Pls.' Opp'n at 7–8. Consequently, the Court will, as plaintiffs now request, dismiss this claim without prejudice to allow the completion of the exhaustion process. *See, e.g.*, *Noisette v. Geithner*, 693 F. Supp. 2d 60, 70 (D.D.C. 2010) (dismissal without prejudice for failure to exhaust administrative remedies); *McAlister v. Potter*, 70 F. Supp. 2d 24, 28 (D.D.C. 2008) (same); *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 11–12 (D.D.C. 2004) (same).

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss must be granted.  An appropriate order accompanies this memorandum opinion.


                                              Henry H. Kennedy, Jr.
                                              United States District Judge